**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KITTERY POINT PARTNERS, LLC,** | ) | **Chapter 11** |
| | ) | **Case No. 17-20316** |
| Debtor. | ) | |
| | ) | |
| **KITTERY POINT PARTNERS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adv. Proc. 17-____** |
| | ) | |
| **BAYVIEW LOAN SERVICING, LLC and** | ) | |
| **TODD ENRIGHT,** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO AVOID OBLIGATIONS AND TRANSFERS AND
TO RECOVER PROPERTY OF THE ESTATE PURSUANT TO THE
BANKRUPTCY CODE, TO RECOVER MONEY DAMAGES,
FOR DECLARATORY RELIEF, AND FOR OTHER RELIEF**

Kittery Point Partners, LLC (the "Debtor" or "KPP"), in its capacity as debtor-in-possession in the above-captioned bankruptcy case, brings this Complaint To Avoid Obligations And Transfers And To Recover Property of the Estate Pursuant To The Bankruptcy Code; To Recover Money Damages, For Declaratory Relief, And For Other Relief (the "Complaint") against Todd Enright ("Enright"), Bayview Loan Servicing, LLC and its affiliated entities, including Bayview Financial Services (collectively, "Bayview").

**Jurisdiction and Venue**

1. On June 22, 2017, KPP filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Petition Date"), thereby commencing a Chapter 11 bankruptcy case before this Court.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3. Venue of this Chapter 11 case in this District is proper pursuant to 28 U.S.C. § 1409(a). Venue of this adversary proceeding in this District is proper pursuant to 28 U.S.C. § 1409(b).

4. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (H). (K) and (0). This adversary proceeding is a core matter over which the Bankruptcy Court may exercise jurisdiction in accordance with the provisions of the foregoing sections of Title 28 of the United States Code.

## Parties

5. KPP is a Delaware limited liability company that was created on April 21, 2005 by filing its Certificate of Incorporation with the Delaware Secretary of State.

6. Upon information and belief, Bayview is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Coral Gables, Florida.

7. Enright is an individual who, upon information and belief, resides in Massachusetts.

## Facts

8. KPP was created in 2005 by Enright, ostensibly to facilitate a like-kind 1031 tax exchange for certain real property located in Kittery Point, Maine (the "Property"), for the benefit of the then owner of the Property, James Austin.

9. The Property had been owned by the Austin family since the 1880's.

10. At the time of creation of KPP, Enright was a trusted advisor to James Austin and his wife, Tudor Austin (together the "Austins").

11.     Enright advised the Austins that they could defer their tax exposure as to the Property if they placed it in an entity that Enright would create for them – KPP – for a discrete period of time.

12.     Unfortunately, Enright's real motivation in his 1031 proposal to the Austins was to further his campaign of swindling the Austins out of as many assets as possible over a series of years.

13.     On March 1, 2005, unbeknownst to the Austins, without their authorization, and before KPP was formed as a limited liability company or had any assets (including the Property), Enright caused KPP to execute and deliver (a) a promissory note from KPP to Middlebury Equity Partners ("MEP") in the face amount of $600,000 (the "Note"); and (b) a mortgage on the Property to MEP as security for the Note (the "Mortgage").  True and accurate copies of the Note and the Mortgage (as filed on August 15, 2007) are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

14.     The Note and Mortgage were executed on behalf of KPP by one Daniel Systo, allegedly in his capacity as a duly-authorized member of KPP, although it did not legally exist.  Upon information and belief, Systo was a handyman who worked for MEP and/or Enright in Vermont and New Hampshire.

15.     Neither KPP nor the Austins ever received any funds or other consideration from MEP or any other party in consideration for and as a result of the execution of the Note and Mortgage.

16.     MEP is an entity that was controlled and owned by Enright at all relevant times; the Bankruptcy Court for the District of Vermont determined, in a Chapter 7 proceeding for Enright, that MEP was Enright's *alter ego*.

17. Despite both being dated March 1, 2005, the Note and Mortgage were both purportedly acknowledged on April 27, 2005, almost two months later.

18. On April 27, 2005, Lawrence Enright (upon information and belief, Lawrence Enright is Todd Enright's father) purported to execute an assignment of mortgage (the "Assignment"), assigning the Mortgage from MEP to Bayview. A true and accurate copy of the Assignment is attached hereto as **Exhibit C**.

19. The transaction was entered into on Bayview's behalf by its employee, Steve Gordon. Upon information and belief Gordon received fees and commissions in connection with completing the purchase of the Note and Mortgage on behalf of Bayview.

20. At all relevant times, Enright was located in New Hampshire, Vermont or Massachusetts, and Gordon and Bayview were located in Florida.

21. Although the Assignment is dated April 27, 2005, it refers to the book and page number for a version of the Mortgage which was recorded in December of 2007, more than two and one half years after the date of the purported Assignment. A true and accurate copy of the December 2007 Mortgage (the acknowledgement on this version of the Mortgage differs from the version attached hereto as Exhibit B) is attached hereto as **Exhibit D**.

22. Gordon, Bayview, and Enright entered into a scheme to continue and perpetuate fraud against the Debtor through the foregoing transactions and further transactions which caused damage to the Debtor by using U.S. Mail and wire to effectuate the scheme.

23. At the time that the Mortgage was allegedly executed, and later acknowledged and at the time that the Assignment was allegedly executed, KPP had no interest in the Property.

24. Upon information and belief, Bayview paid MEP and Enright hundreds of thousands of dollars for the fraudulent KPP debt package. KPP never received any of those funds.

25.     Bayview purchased the fraudulent KPP debt package despite knowing that the Note and Mortgage transactions were fraudulent; or in the alternative, Bayview should have known that the Note and Mortgage transactions were fraudulent.

26.     Upon information and belief, Bayview financially benefitted from the scheme when it securitized the fraudulent KPP debt package.

27.     On May 26, 2005 at the urging of Enright, in order to further the fraudulent scheme, James Austin executed a quitclaim deed to the Property to KPP (the "Austin Deed"). A true and accurate copy of the Austin Deed is attached hereto as **Exhibit E**. The Austin Deed was not recorded at the time it was executed and delivered.

28.     The Austins had no idea at that time that KPP had executed the Note and Mortgage in favor of MEP and never would have agreed to that course of action, had they known.

29.     The Austin Deed was not recorded in the York Country Registry of Deeds until January 27, 2006.

30.     The Mortgage was not recorded in the York County Registry of Deeds until August 15, 2007.

31.     The Assignment was not recorded in the York County Registry of Deeds until December 10, 2007. As mentioned above, the Mortgage was re-recorded in the York County Registry of Deeds on December 10, 2007.

32.     Neither Enright nor MEP ever informed the Austins that KPP had purportedly executed the Note and Mortgage in favor of MEP or that MEP had then purported to assign the Mortgage to Bayview.

5

33. In 2008, Bayview took steps to foreclose the Mortgage on the Property which, unsurprisingly, went into default because Enright and Systo had failed to make payments purportedly required under the Note.

34. In connection with its foreclosure of the Mortgage, Bayview retained attorney James Auddifred ("Auddifred").

35. As part of his due diligence on behalf of Bayview, Auddifred discovered, and advised Bayview of the fact that KPP did not own the Property when the Note and Mortgage were executed and he warned that "there may be a complete failure of title in the mortgage." He went on to note that this was "another convoluted Middlebury Equity Partners deal" and told Bayview that the entire transaction could be fraudulent.

36. Upon information and belief, Auddifred, when faced with a possible "complete failure of title in the mortgage", looked into making a claim under a lender's title insurance policy, but was told that the while a commitment for such title policy had been issued, the policy itself had never been issued.

37. Notwithstanding the warnings from Auddifred, Bayview proceeded with a civil action foreclosure proceeding in the Maine Superior Court. Neither Enright nor Systo, who were in control of KPP at that time, nor any attorney or other representative of KPP appeared to contest the foreclosure. The Austins did not contest the foreclosure because they were never notified of it by Bayview or anyone else.

38. With no defense to the foreclosure action having been presented to the Superior Court, the Court issued a default judgment for foreclosure in November of 2008.

39. The Austins first learned of the Bayview foreclosure action on or about September 29, 2008, after a contractor doing work on the Property told them that Bayview had filed a notice of foreclosure in the York County Registry of Deeds.

40. Horrified by what had happened on Enright's watch, James and Tudor Austin took control of KPP in January of 2009.

41. Armed with that foreclosure judgment, Bayview informed Tudor Austin that it would cause the Property to be sold at foreclosure auction if she did not cause KPP to execute a forbearance agreement, entitled the "Delinquency Repayment Agreement" ("<u>DRA</u>"). A true and accurate copy of the DRA is attached hereto as **<u>Exhibit F</u>**.

42. Faced with the loss of her family residence and under duress from Bayview, Tudor Austin executed the DRA on behalf of KPP on February 27, 2009. Bayview subsequently dismissed the foreclosure proceedings.

43. The DRA was never recorded with the York County Registry of Deeds or the Maine Secretary of State.

### Count I: Objection to Claim

44. KPP restates and realleges, as if fully set forth herein, each and every allegation of the Complaint set forth above.

45. The Note and the Mortgage are unenforceable against KPP because, *inter alia*, KPP did not legally exist at the time of the purported execution and delivery of the Note and Mortgage. Further, no consideration was exchanged for the execution and delivery of the Note and Mortgage. As such, the Note and Mortgage are each a nullity and conveyed no rights to MEP or its assignee, Bayview.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) finding, determining and declaring that the Note and Mortgage are null and void and that Bayview holds no claims, be it secured or unsecured against, KPP, or the Property or the bankruptcy estate; (b) disallowing any claims against KPP or the Property and the bankruptcy estate asserted by Bayview or any affiliates of Bayview; and (c) granting such other relief as the Court deems just and appropriate.

### Count II: Avoidance of Mortgage

46. KPP repeats and realleges, as if set forth fully herein, each and every allegation of the Complaint set forth above.

47. The Note and Mortgage are defective because, *inter alia,* they were executed before KPP existed and before KPP owned the Property purportedly being mortgaged.

48. The deed from James Austin to KPP for the Property was recorded on January 27, 2006. The Mortgage was recorded on August 15, 2007, approximately 18 months after the recording of the Austin deed, and as recorded, recited a transfer of the Property on March 1, 2005, more than two years prior to the recordation of the Austin deed.

49. On the Petition Date, KPP, as debtor-in possession, acquired the rights of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

50. Among the rights so acquired by KPP on the Petition Date, were the rights described in 11 U.S.C. § 544(a). Without limiting the generality of these rights, KPP acquired, as of the Petition Date, the rights and powers of a hypothetical *bona fide* purchaser of the Property.

51. Under the circumstances described herein, the recordation of the Mortgage provided no record notice of any alleged interest of the purported mortgagee, Bayview, in the Property.

52. No other notice of the interest of Bayview in the Property was recorded or otherwise provided by public record or otherwise.

53. Therefore, the Mortgage is null and void as to KPP pursuant to 11 U.S.C. § 544(a).

WHEREFORE, the Debtor respectfully requests that the Court enter an Order (a) avoiding the Mortgage pursuant to 11 U.S.C. § 544(a); and (b) granting such further and additional relief as the Court deems just and proper.

### COUNT III - Fraudulent Transfer

54. KPP repeats and realleges, as if set forth fully herein, each and every allegation of the Complaint set forth above.

55. The DRA, by its terms, purported to correct, ratify and reaffirm the Note and the Mortgage, which were otherwise void and unenforceable by reason of the facts and circumstances set forth herein, and conveyed no interest in the Property.

56. To the extent that the DRA constituted a correction, ratification and/or reaffirmation of the numerous deficiencies in the Note and Mortgage set forth above, it constituted a transfer by KPP of its interest in the Property pursuant to 11 U.S.C. § 548.

57. Under 11 U.S.C. § 548(d)(1), such transfer is deemed to have been made on the date that it was perfected against *bona fide* purchasers. Because the DRA was never recorded, it was never perfected against *bona fide* purchasers and therefore is deemed to have occurred immediately preceding the Petition Date pursuant to that Code provision.

58. KPP received less than reasonably equivalent value for the transfer because, *inter alia*, KPP received no consideration for the transfer of the Property.

59. At the time the transfer occurred, the Debtor believed that it was incurring debts, including those due under the Note that would be beyond the Debtor's ability to pay as such debt matured.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) determining that the DRA constituted a fraudulent transfer pursuant to 11 U.S.C. §548; (b) avoiding the DRA pursuant to 11 U.S.C. §550; and (c) granting such further and additional relief as the Court deems just and proper.

### COUNT IV – Declaratory Judgment as to Superior Court Order

60. KPP restates and realleges, as if fully set forth herein, each and every allegation of the Complaint set forth above.

61. In 2011, KPP brought suit against, *inter alia*, Bayview, in the York County Superior Court seeking a declaration of that Court, determining that the Note and Mortgage were invalid because, *inter alia*, those instruments were induced by fraud and were not supported by any consideration. In that proceeding, Bayview counterclaimed, seeking to affirm the validity of the Note and the Mortgage

62. On November 30, 2016, the York County Superior Court issued its Decision and Order Granting Partial Summary Judgment in favor of Bayview (the "S/J Order"). In the S/J Order, the Court ruled that by reason of the DRA, the Note and Mortgage were valid and enforceable.

63. Because the DRA is avoidable as a fraudulent transfer pursuant to 11 U.S.C. §548, the S/J Order is null and void.

WHEREFORE, the Debtor requests that this Court enter an order, pursuant to, *inter alia*, 28 U.S.C. § 2201, (a) declaring and adjudging that the S/J Order is null and void; and (b) granting such other and further relief as is just and proper.

### **COUNT IV - Fraud**

64. KPP restates and realleges, as if fully set forth herein, each and every allegation of the Complaint set forth above.

65. Enright and Gordon, an employee of Bayview, knowingly made false representations of material facts to the Debtor and to the Austins, in order to induce the Austins to transfer the Property to KPP, and for KPP to mortgage the Property to MEP and to Bayview.

66. Enright, Gordon and Bayview intended to defraud the Austins and the Debtor as part of a scheme to deprive them of valuable property and to create false fees and commissions.

67. Bayview made additional false representations of material facts to the Debtor regarding its rights to foreclose on the Property with knowledge of their falsity or in reckless disregard of whether they were true or false for the purpose of inducing the Debtor to transfer its interest in the Property to Bayview, and subsequently, to execute and deliver the DRA.

68. The Debtor allegedly transferred an interest in the Property by (a) entering into the Mortgage in reliance on the misrepresentations of Enright and Bayview; and (b) entering into the DRA with Bayview.

69. The Debtor justifiably relied upon the representations made by Bayview and Enright as true and acted upon them to its detriment, causing it financial damage.

70. The fraud perpetrated by Enright and Bayview is and was a continuing fraud, and has continued through the present date, in that, without limitation, Bayview continues to seek the enforcement of the Note and Mortgage.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) invalidating the Note, the Mortgage, and the DRA as induced by fraud; (b) awarding damages and punitive damages on account of such fraud; and (c) granting such other and further relief as is just and proper.

**COUNT VI – Conspiracy to Violate, and Violations of 18 U.S.C. §§ 1961 – 1968(a)**

71. KPP repeats and realleges, as if set forth fully herein, each and every allegation of the Complaint as set forth above.

72. Enright, Gordon and Bayview together constituted an association-in-fact enterprise working together to obtain fraudulent mortgages, and then securitize them for sale to the public.

73. As part of the scheme, Enright agreed to create the fictitious Note and Mortgage for the non-existent KPP, and Gordon, on behalf of Bayview, agreed to purchase the fictitious Note and Mortgage.

74. The KPP transaction was one of many entered into between Enright and Gordon, on behalf of Bayview.

75. Bayview knew that the Note and Mortgage were fraudulent, or acted in reckless disregard of the fraudulent nature of the Note and Mortgage, and proceeded with the purported Assignment anyway.

76. Bayview subsequently securitized the transaction, along with others, raising substantial profits.

77. In 2008, Gordon entered a guilty plea in connection with a criminal proceeding in Florida admitting to fraud in connection with over 2,800 mortgage transactions.

78. Bayview entered into the DRA with the Debtor with knowledge that the Note and Mortgage were fraudulent, or in reckless disregard of the fraudulent nature of the Note and Mortgage, thereby furthering the scheme perpetrated upon the Debtor.

79. Bayview has continued to assert rights under the fraudulent Note and Mortgage against the Debtor, notwithstanding knowledge of the fraudulent nature of the Note and Mortgage.

80. The scheme perpetrated on KPP and the Austins was one of a number of such schemes perpetrated upon other parties over a period of time.

81. These schemes establish a pattern of racketeering by the enterprise. The continuation of the scheme as to the Debtor is also a continuation of damages as to the Debtor.

82. Enright, Gordon and Bayview have utilized the U.S. mail, telephone and email as instruments of the above described scheme and as instruments in the continuing fraud upon the Debtor.

83. The Debtor has suffered financial harm and damage as a result of Enright and Bayview's conduct.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) entering judgment in favor of KPP; (b) awarding KPP treble damages and attorneys' fees; and (c) granting such other and further relief as it deems just and proper.

## COUNT VII – Turnover of Property of the Estate

84. KPP restates and realleges, as if fully set forth herein, each and every allegation of the Complaint set forth above.

85. At or around the time that the DRA was executed and thereafter, Bayview demanded that KPP pay certain amounts allegedly due under the Note to Bayview and/or its affiliates or agents, including M&T Mortgage Corporation ("M&T"). 87. As set forth

herein, those payments were made for no consideration, pursuant to the Note and Mortgage, which are and were at all times null and void, and those funds constitute property of the Debtor's estate.

88.     Bayview claims an interest in the Property by virtue of the Mortgage.

88.     The interests in the Property claimed by Bayview by reason of the Mortgage are null and void, and such intersests are property of the Debtor's estate.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) compelling the turnover of all funds wrongfully paid by KPP to Bayview and any affiliates or agents, including M&T; (b) compelling turnover of the Note and Mortgage; and (c) granting such other and further relief as it deems just and proper.

*KPP demands a trial by jury on all counts where such relief is available.*

Dated:  October 12, 2017            /s/ George J. Marcus
                                    George J. Marcus
                                    David C. Johnson
                                    Katherine M. Krakowka

                                    MARCUS | CLEGG
                                    One Canal Plaza, Suite 600
                                    Portland, ME  04101
                                    (207) 828-8000

                                    Counsel for Kittery Point Partners, LLC